IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONOVAN SIMPSON,

    Petitioner,

v.

    CASE NO. 2:06-cv-127
    JUDGE SARGUS

WANZA JACKSON, Warden,

    MAGISTRATE JUDGE ABEL

    Respondent.

## OPINION AND ORDER

On October 20, 2006, the Magistrate Judge recommended that this action be dismissed as untimely under 28 U.S.C. §2244(d), and therefore denied petitioner's request for a stay and to amend the petition with additional new claims. Petitioner has filed objections to the Magistrate Judge's *Report and Recommendation.* Doc. No. 17. Petitioner correctly notes that his post conviction action was pending in the state courts from June 7, 2002, until February 18, 2005. *See Objections*; Exhibit 25 to Return of Writ. Although the state trial court denied petitioner's post conviction petition by concluding that his claims were barred under Ohio's doctrine of *res judicata, see* Exhibit 25 to Return of Writ, the post conviction petition nonetheless tolled the running of the statute of limitations under 28 U.S.C. §2244(d)(2). *Lucas v. Carter*, 46 F.Supp.2d 709, 711-712 (N.D. Ohio 1999), citing *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 699-701 (W.D.Tex.1998); *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997); *United States v. Gilmore*, 1998 WL 372060 (N.D.Ill. June 29, 1998). Petitioner signed the instant petition on February 15, 2006. Thus, his habeas corpus petition is timely. Petitioner's objections to the

Magistrate Judge's recommendation that this habeas corpus petition be dismissed as untimely therefore are **SUSTAINED**.

For the reasons that follow, petitioner's request to amend the petition with additional new claims, Doc. Nos. 12, 14, is **GRANTED**. His request for a stay of proceedings, Doc. No. 12, is **DENIED**. Petitioner is advised that this action will be dismissed as unexhausted, unless he notifies the Court within ten (10) days that he wishes to delete his unexhausted claim of actual innocence from his habeas corpus petition. Petitioner's request for an evidentiary hearing is **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are summarized in the *Report and Recommendation,* October 20, 2006, and are as follows:

> In the early morning hours of October 27, 1997, a fire broke out at 151 South Wheatland Avenue in Columbus, Ohio. At the time, Aleta Bell and three of her four children, Shenequa, age five, Elijah, age three, and Myesha, five-months old, were asleep in the house. Also sleeping in the house were two men, Terrance Hall and Gary Williams, Myesha's father. Hall was awakened early that morning by a loud crash of glass. He found the house engulfed in flames. After running out of the house, Hall was able to wake Aleta Bell and Williams, who were sleeping with Myesha in the same room. They were able to get out of the house. Unfortunately, they were not able to reach the two children who were sleeping in a back bedroom. Members of the Columbus Fire Department ("CFD") arrived on the scene and were able to find the two children and take them directly to Children's Hospital. However, as a result of the injuries sustained in the fire, Shenequa Bell died days later. Elijah Bell survived, but suffered serious injuries.
>
> By indictment filed August 24, 2000, appellant was charged with thirteen counts relating to the fire at 151 South Wheatland Avenue. Appellant was charged with two counts of aggravated murder for the death of Shenequa Bell, in violation of R.C. 2903.01. Both counts contained death penalty specifications pursuant to R.C. 2929.04(A). Appellant was also charged with five counts of attempted murder of

2

the five other people in the house, in violation of R.C. 2923.02 and 2903.02; one count of aggravated arson, in violation of R.C. 2909.02; and five counts of felonious assault, in violation of R.C. 2903.11. Appellant entered a not guilty plea to all of the charges and proceeded to a jury trial.

Before his trial, appellant sought to suppress four verbal statements he made to police officers prior to being indicted. Two of these statements, one on April 24 and another on April 27, 2000, were made to officers while appellant was incarcerated in the Licking Southeastern Correctional Institution for an unrelated crime. Both of these statements were recorded. No *Miranda* warnings were given to appellant before he made these statements. The other two statements, one on June 16 and one on June 20, 2000, were made at Columbus Police Headquarters. Both of these statements (which were essentially confessions) were videotaped. Appellant was read his *Miranda* rights before these statements were made and he signed a form indicating he understood and waived those rights. After an evidentiary hearing, the trial court denied his motion thereby permitting the state to introduce these statements into evidence at trial.

The following key testimony was presented during the state's case. CFD Battalion Chief Tom Hackett was the first fire fighter to arrive at the scene of the fire. He testified that, when he arrived, there was a male and a female with a small infant on the front roof of the house. He stated that, when water from the fire hoses hit the fire, the fire flashed back, which was not typical. Hackett testified that a fire flashback under these circumstances was consistent with the presence of a flammable liquid. It was his impression from the size of this fire and the time it took to extinguish it that the fire was intentionally set.

After the fire was extinguished, Kenyon Beavers, a dog handler for the CFD, testified that he went to the scene with his dog to search through the first floor of the house for traces of flammable liquids. Beavers and the dog walked through the first floor from the back to the front of the house. In the front of the house, in the living room right inside a large window, the dog gave a "primary alert" (i.e., an indication that the dog detected the presence of a flammable liquid). After searching the rest of the room, Beavers took the dog outside, where the dog gave another "primary alert," this time on the porch directly outside the large window in the living room. On cross-examination, Beavers admitted that surface samples taken from the

areas where his dog had indicated the primary alerts did not show the presence of an accelerant when tested.

Billy Reedus, a CFD investigator who investigated the fire, testified that he arrived at the scene after the fire was extinguished. Upon arrival, it was obvious to him that the fire damage was centered in the living room and that the fire's point of origin was in that room. Specifically, he testified that the fire started in the area below the large window in the living room. He also saw a pattern of fire damage in the house that was consistent with the presence of some sort of accelerant at the origin of the fire. He then eliminated likely accidental causes of a fire, such as electrical, weather and cigarettes, to arrive at his conclusion that the fire was intentionally set. He further concluded that the fire had been set by a Molotov cocktail that was thrown through the large window in the living room. Reedus testified that a Molotov cocktail consists of a glass bottle filled with a flammable liquid, such as gasoline or alcohol. A wick of some sort is then placed in the bottle and set on fire. The bottle is thrown at the structure causing the bottle to break on impact. The fire spreads through the spreading accelerant. Although he could find no definite physical evidence of a Molotov cocktail, Reedus concluded that one had been thrown through the large living room window to start the fire.

Detective Edward Kallay, Jr., a homicide detective who was the primary investigator in this matter for the Columbus Police Department ("CPD"), testified that, in January 2000, he had a conversation with a man named Adiyat Diggs. Based upon that conversation, Kallay believed that appellant might have information about a suspect who the police thought could have been involved in starting this fire. On April 24, 2000, Detective Kallay and Federal Special Agent Ozbolt spoke with appellant at the Southeastern Correctional Institution in Licking County where appellant was incarcerated. Their conversation was recorded.

Detective Kallay testified that appellant told him that he had picked up a man named Daryl "Pumpkin" Kelly the day before the fire and took him to a bar to meet a woman named Leah.[FN1] Appellant waited outside while Daryl Kelly went into the bar. When Kelly and Leah came out, appellant heard Leah tell Kelly to "take care of this for me." Appellant told Detective Kallay that he got a call from an excited Daryl Kelly the next morning who said he needed another ride. When appellant picked Kelly up, he said that Kelly smelled like

4

gasoline. Daryl "Pumpkin" Kelly was a suspect even before appellant provided this information.

FN1. Leah was Leah Smith, a former friend of Aleta Bell who lived in the other half of the house at 151 South Wheatland Avenue. Days before the fire, Leah had moved out of the house. The two had been involved in a dispute earlier in the summer of 1997, when Aleta Bell accused Leah of forging a driver's license with Aleta's personal information but with Leah's picture. When Aleta found the driver's license, she took it back. Leah later broke into Aleta's home and stole the driver's license. Leah was charged with and pled guilty to one count of burglary arising from that incident.

Three days later, on April 27, 2000, Detective Kallay and Special Agent Ozbolt went to the Southeastern Correctional Institution to talk with appellant again. In a recorded conversation, appellant again implicated Leah and Kelly in the fire at 151 South Wheatland Avenue. Following this conversation, the officers obtained appellant's release on probation so that he would cooperate with them in their investigation. However, appellant failed to cooperate, leading the officers to believe that appellant had more to do with the fire than he was admitting. Due to appellant's failure to cooperate with the investigation and failure to abide by the terms of his probation, Detective Kallay arrested appellant on June 16, 2000.

After he was arrested, appellant was taken to CPD headquarters and interrogated by Detective Kallay and Special Agent Ozbolt. The interrogation was videotaped. It is undisputed that, prior to being questioned, appellant was read his *Miranda* rights. During questioning, appellant admitted his involvement in starting the fire. He said that he met Leah and Kelly the day before the fire when Leah asked appellant to take Kelly somewhere that night. Later that evening, Kelly and appellant took two empty bottles of alcohol and filled them with gasoline. They brought the bottles to Leah who showed them how to make a Molotov cocktail. Appellant and Kelly then went to the area of 151 South Wheatland Avenue and drove into an alley. After smoking some crack, Kelly got out of the car with the two bottles and, a few seconds later, appellant heard glass break and then saw Kelly running back towards the car without the bottles. The two sped away to a crack house, where they paged Leah. She arrived and paid them both with crack cocaine.

Detective Kallay further testified that, following these admissions, he made arrangements to have appellant take a polygraph test. On June 20, 2000, appellant was brought again to the CPD to take the test. It is undisputed that appellant was read his *Miranda* rights again. However, Detective Kallay testified that appellant was uncooperative so the test could not be performed. Appellant's lack of cooperation was confirmed by the testimony of Randy Walker, who had been hired to administer the test. Nevertheless, while in the room waiting to take the test, appellant made more admissions regarding his involvement in the fire. Again, this interrogation was videotaped.

Appellant's recorded statements of April 24th April 27th and his videotaped confessions of June 16th and June 20th were played for the jury over appellant's objections.

The state then called Stanley Bowen, a Deputy Sheriff for Licking County. Deputy Bowen was employed as a supervisor at the jail in which appellant was incarcerated in April 2000. Deputy Bowen testified that he overheard appellant ask "why didn't they charge the bitch too. It was her idea to start the fire ." In addition, an inmate, who was in a cell next to appellant, testified that appellant told him all about the fire. He said that appellant told him there were three people involved, and that they used Molotov cocktails to firebomb the house.

At the conclusion of the state's case, appellant orally moved, pursuant to Crim.R. 29, for a judgment of acquittal on the entire indictment, based upon the state's alleged failure to prove the requisite mens rea. The trial court denied the motion. Appellant then was advised of his constitutional rights regarding his own testimony and he did not testify. The defense rested its case without presenting any witness and renewed its motion for judgment of acquittal, which again was denied by the trial court.

After deliberating, the jury returned verdicts finding appellant guilty of all five counts of attempted murder and felonious assault, guilty of one count of aggravated arson, guilty of the lesser included offense of murder of Shenequa Bell, and guilty of the aggravated felony-murder of Shenequa Bell, also finding appellant guilty of the death penalty specification because the aggravated murder was part of a course of conduct involving the purposeful killing of, or attempt to kill, two or more persons.

6

>Subsequently, a mitigation hearing was held to determine the proper penalty for the death penalty count of the indictment. The jury found that the aggravating circumstances of the crime did not outweigh the mitigating circumstances beyond a reasonable doubt and, therefore, voted to impose a sentence of life imprisonment without parole eligibility for thirty years. The trial court sentenced appellant on all counts to a total of 90 years in prison.

Exhibit 14 to Return of Writ. Represented by new counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

>1. The trial court erred when it failed to conduct an inquiry of appellant after it discovered that defense counsel labored under a conflict of interest.
>
>2. The trial court erred when it admitted pretrial statements made by appellant during custodial interrogation in violation of the Fifth and Fourteenth Amendments of the United States Constitution.
>
>3. The trial court abused its discretion when it admitted unreliable expert testimony by fire department personnel.
>
>4. The trial court erred in admitting appellant's purported confessions absent evidence of the corpus delicti.
>
>5. Trial counsel rendered ineffective assistance of counsel when they failed to request or utilize an expert in the field of false confessions.
>
>6. The trial court erred when it overruled appellant's motions for judgment of acquittal because there was insufficient evidence of purpose.
>
>7. The trial court erred in admitting hearsay testimony from a witness that was unavailable.

7

> 8. The trial court erred in denying a motion for a mistrial and permitting the prosecution to display a gruesome photograph to the jury.
>
> 9. The trial court erred when it instructed the jury on the use of 404(b) evidence.
>
> 10. Trial counsel rendered ineffective assistance when they failed to oppose a request by the jury during deliberations to replay tape recordings of defendant's statements.
>
> 11. The trial court erred when it failed to make the requisite findings to support maximum and consecutive sentences under R.C. §2929.14(E).

Exhibit 11 to Return of Writ. On July 23, 2002, the appellate court sustained petitioner's eleventh assignment of error but otherwise affirmed the judgment of the trial court, and remanded the case to the trial court for re-sentencing. Exhibit 14 to Return of Writ. Still represented by counsel, petitioner filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the following propositions of law:

> 1. When a trial court discovers that defense counsel is representing an informant who has provided information against former client of defense counsel it should 1) inform the defendant of his right to independent counsel and 2) conduct an inquiry to determine whether defense counsel labors under a conflict of interest.
>
> 2. When police officers question a[n] inmate about an offense different from that for which the inmate is in custody *Miranda* warnings are required.
>
> 3. Police minimization of the importance of the Miranda warnings, coupled with misrepresenting the purpose of a rights waiver form, being denied the use of a phone and being threatened with two felony charges, render inculpatory statements involuntary and inadmissible.

8

4. Threats by police coupled with the use of a pretextual exculpatory polygraph test render inculpatory statements involuntary and inadmissible.

5. A necessary precondition to the admissibility of expert testimony is that the methodology utilized by an expert witness to render an opinion must be reliable.

6. Absent evidence of the corpus delecti a purported confession is inadmissible.

7. When a defense is based on the theory that the defendant gave a false confession trial counsel render ineffective assistance when they fail to request or utilize an expert in the field of false confessions.

8. There is insufficient evidence of the specific intent to cause the death of another when the object of the offense is to burn a home.

9. Hearsay testimony from a declarant that was unavailable and does not fit into any exception under the rules of evidence is not admissible.

10. Before evidence of other acts is introduced at trial, on timely request of the defendant, the prosecutor should specify those elements under Evid.R. 404 that the evidence is being introduced to prove and the trial court should confine a limiting instruction to those elements alone.

11. Where there is no physical evidence linking the defendant to the offenses charged in the indictment and the only evidence that defendant participated in the crime was presented through videotapes of his interrogation by police, trial counsel renders ineffective assistance when they failed to oppose a request by the jury during deliberations to replay tape recordings of defendant's statements.

Exhibit 17 to Return of Writ. On December 18, 2002, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit 19

to Return of Writ. On January 23, 2003, the trial court re-sentenced petitioner to an aggregate term of 79 years. Exhibit 15 to Return of Writ. Petitioner apparently never filed any appeal of his sentence.

Meanwhile, however, on June 7, 2002, petitioner filed a *pro se* petition for post conviction relief with the state trial court. He asserted that he was denied a fair trial due to pre-indictment delay, and that he was denied the effective assistance of trial counsel due to his attorney's failure to file a motion to dismiss the indictment on the basis of pre-indictment delay. Exhibit 20 to Return of Writ. Petitioner thereafter filed an amendment to his post conviction petition in which he additionally asserted that the trial court improperly failed to rule on pre-trial motions. Exhibit 22 to Return of Writ. On February 18, 2005, the appellate court denied petitioner's claims as barred under Ohio's doctrine of *res judicata*. Exhibit 25 to Return of Writ. Petitioner filed a timely appeal in which he again raised the same assignments of error. Exhibit 27 to Return of Writ. On June 6, 2005, the state appellate court issued the following journal entry:

> A review of the brief of appellant filed on May 5, 2005, reveals a brief which is not typewritten as required by App.R. 19(A). The brief contains assignments of error which do not contain page references to the places in the record where the alleged errors occurred pursuant to App.R. 16(A)(3) of the Ohio Rules of Appellate Procedure. Also, the brief does not have attached a copy of the trial court judgment entry and decision as required by Loc.R.7(F). Unless a corrected brief is filed not later than June 13, 2005, with a motion for leave to file, the brief of appellant will be sua sponte stricken from the file for failure to comply with Ohio and Local Rules of Appellate Procedure.

Exhibit 28 to Return of Writ. On July 7, 2005, petitioner filed another appellate brief. Exhibit 30 to Return of Writ. On August 16, 2005, the appellate court dismissed the appeal for failure to comply with App.R. 16 and Loc.R. 7. Exhibit 32 to Return of Writ. On August 24, 2004, petitioner

filed a motion for new trial with the state trial court. He asserted that the warrant that had been issued for his arrest was invalid. Exhibit 33 to Return of Writ. On February 18, 2005, the trial court denied petitioner's motion as untimely and barred under the doctrine of *res judicata*. Exhibit 36 to Return of Writ. December 14, 2004, petitioner filed a motion to dismiss the charges against him on speedy trial grounds. Exhibit 37 to Return of Writ. Petitioner also apparently filed, on May 12, 2005, a motion for new trial in which he asserted the ineffective assistance of trial counsel. *See* Exhibit 40 to Return of Writ. On September 29, 2005, the trial court denied both of the foregoing motions as untimely and barred under the doctrine of *res judicata*. *Id.* On March 23, 2005, petitioner filed a motion to vacate his conviction. He asserted:

> 1. The defendant was forced to wear a stunbelt during his trial.
>
> 2. The verdict form failed to state the degree of the offenses charged.
>
> 3. The verdict form failed to include all of the required essential elements of the offenses charged.

Exhibit 41 to Return of Writ. On September 27, 2005, the trial court denied petitioner's motion to vacate as untimely. Exhibit 42 to Return of Writ. On March 14, 2006, petitioner filed a petition for a writ of habeas corpus with the Ohio Supreme Court. Petitioner asserted that he was in custody at the time the charges at issue took place. Exhibit 43 to Return of Writ. On April 26, 2006, the Ohio Supreme Court dismissed petitioner's habeas corpus petition. Exhibit 44 to Return of Writ.

On February 24, 2006, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

11

1. Trial court erred in admitting hearsay testimony from a witness who was unavailable.

2. Trial counsel was ineffective for failing to oppose a request by the jury during deliberation to view defendant's statement.

3. Trial court abused its discretion when it admitted unreliable expert testimony by fire department personnel.

4. Trial court erred when it failed to make the requisite findings to support maximum and consecutive [sentences] under R.C. 2929.14(E).

5. Conviction obtained by use of coerced confession.

6. Trial court erred when it overruled a motion for acquittal because there was insufficient evidence of purpose.

7. Trial court erred when it failed to conduct an inquiry of defendant after it discovered that defense counsel labored under a conflict of interest.

8. Trial court erred in admitting defendant's purported confession absent evidence of the corpus delecti.

9. Trial counsel was ineffective for failing to use or request to use an expert in false confessions.

10. Trial court erred when it instructed jury on the use of 404(b) evidence.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## II. PETITIONER'S REQUEST TO AMEND AND FOR A STAY OF PROCEEDINGS

On July 12, 2006, petitioner filed a motion requesting a stay of proceedings while he exhausts a claim of actual innocence in the state courts. Petitioner states that he has

> submitted a petition for post conviction relief claiming actual innocence with newly discovered evidence.
>
> \*\*\*
>
> [I]t took 4 ½ years to develop the case of actual innocence due to the state's failure to turn over the requested documents.

*Motion to Hold in Abeyance or Amend*, Doc. No. 12. Petitioner also has requested to amend the petition to include a claim of actual innocence; however, petitioner has provided no further specificity regarding the basis for his claim of actual innocence. *Id.; see also* Doc. No. 14. On August 29, 2006, petitioner also requested to amend the petition to include "all grounds presented in [his] motion for a new trial." *Motion to Amend Petition*, Doc. No. 14. Although petitioner does not provide further specificity regarding this request, the record reflects that petitioner asserted in his motion for a new trial that the warrant for his arrest was invalid. *See* Exhibits 33 and 36 to Return of Writ. The Court presumes that petitioner is requesting to amend his petition to include this same claim here. Respondent opposes petitioner's request to amend the petition to include a claim of actual innocence on the basis that petitioner failed to request leave to file an amended pleading under Federal Rule of Civil Procedure 15(a),[1] and because, according to the respondent, the

---

[1] Federal Rule of Civil Procedure 15(a) provides:

Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to

13

claim lacks merit and is not cognizable in federal habeas corpus review. *Respondent's Memorandum in Opposition*, Doc. No. 13. Respondent has not responded to petitioner's request to amend the petition with a claim that his arrest warrant was invalid. *See id.*

Petitioner's requests to amend the petition with new claims do not appear to be time-barred under 28 U.S.C. §2244(d).[2] *See Mayle v. Felix*, 545 U.S. 644 (2005)(motion to amend habeas corpus petition with untimely new claims may be barred unless such claims "relate back" to the date the initial petition was filed within the meaning of Federal Rule of Civil Procedure 15. Petitioner's request to amend the petition with new claims that his arrest warrant was invalid and that he is actually innocent of the charges against him therefore is **GRANTED**.

Petitioner acknowledges that his claim of actual innocence is unexhausted. He requests a stay of proceedings in order to exhaust such claim in the state courts. Petitioner appears to indicate that he has raised his claim of actual innocence in a post conviction petition that is currently pending

---

which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

[2] Because petitioner's post conviction petition apparently was pending in the state courts from June 7, 2002, until September 30, 2005 (forty-five days after the state appellate court's August 16, 2005, dismissal of petitioner's appeal, when the time period expired to file an appeal to the Ohio Supreme Court, *see Abela v. Martin*, 348 F.3d 164, 170 (6th Cir. 2003)), without consideration of any of petitioner's subsequent post conviction filings, the statute of limitations did not expire until September 30, 2006. Petitioner filed his requests to amend the petition with new claims in July and August 2006, prior to such date.

14

in the state trial court. *See* Doc. No. 12.

A District Court may, in its discretion, stay federal unexhausted habeas corpus proceedings where the one-year statute of limitations under 28 U.S.C. §2244(d) may bar the petitioner from re-filing a habeas corpus petition dismissed in its entirety as unexhausted. *Rhines v. Weber*, 544 U.S. 269, 277-278 (2005). However, the Supreme Court has cautioned that a stay should be granted only under limited circumstances:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

\*\*\*

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. *See Lundy,* 455 U.S., at 522, 102 S.Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the

> petitioner's right to obtain federal relief. *See id.,* at 520, 102 S.Ct. 1198 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

*Id.*

> A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

*Pace v. DiGuglielmo,* 125 S.Ct. 1807, 1814 (2005).

Here, even assuming that petitioner could establish good cause for his failure to exhaust his claim of actual innocence in the state courts, the record fails to reflect that such claim is potentially meritorious. *See Rhines v. Weber, supra.* Petitioner has filed at least two prior petitions for post conviction relief in the state courts. Exhibits 25, 41, 42. Thus, it appears that any post conviction petition now filed and raising a claim of actual innocence would be barred as untimely and successive under O.R.C. §2953.23, which provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

*Id.* As discussed, petitioner has failed to provide any specificity regarding his actual innocence claim; the record therefore fails to reflect that he can meet these requirements here.

In *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit held that claims were "plainly meritless" for purposes of deciding whether to grant a stay of habeas corpus proceedings, where the petitioner was procedurally barred from raising his unexhausted claims in the state courts. Further,

> [a]lthough actual innocence may excuse procedural default, it does not constitute a constitutional claim in itself. *See Herrera v. Collins*, 506 U.S. 390, 404- 05 (1993), cited in *Schlup v. Delo*, 513 U.S. 298, 314 (1995). The Sixth Circuit has interpreted *Herrera v. Collins* to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases. *See Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir.2005). The function of a federal court reviewing a habeas corpus petition is to ensure that the petitioner is not imprisoned in violation of the constitution, not to correct errors of fact. *Herrera*, 506 U.S. at 400.

*Sitto v. Bock*, 2006 WL 2559765 (E.D. Michigan August 30, 2006); *see also House v. Bell*, 126 S.Ct. 2064, 2086-87 (2006)(declining to resolve whether free standing actual innocence claim may bar a defendant's execution). Finally, even assuming, *arguendo,* that a claim of actual innocence was

17

cognizable as an independent claim in habeas corpus proceedings, petitioner's claim of actual innocence is entirely without support. *See House v. Bell, supra.*

For all of the foregoing reasons, petitioner's objections to the Magistrate Judge's recommendation of dismissal of his habeas corpus petition as time-barred are **SUSTAINED**. Petitioner's request sto amend the petition with a claim that his arrest warrant was invalid, and a claim that he is actually innocent, Doc. Nos. 12, 14, are **GRANTED**. His request for a stay of proceedings, Doc. No. 12, is **DENIED**. Petitioner is advised that this action will be dismissed as unexhausted, unless he notifies the Court within ten (10) days that he wishes to delete his unexhausted claim of actual innocence from this habeas corpus petition. *See Rhines v. Weber, supra.* Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS SO ORDERED.**

1-22-2007

EDMUND A. SARGUS, JR.
United States District Judge